UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CENTRIFUGE SUPPLIES, INC., | )   CASE NO.   19-05567-JJG-7 |
|     DEBTOR. | ) |

**MEMORANDUM IN FURTHER SUPPORT OF
TRUSTEE'S APPLICATION TO EMPLOY SPECIAL COUNSEL**

Come now Thomas A. Krudy, the Chapter 7 trustee of this bankruptcy proceeding ("Trustee"), along with interested parties Separators, Inc. ("Separators") a creditor holding an undisputed claim in excess of $12 million; and proposed special counsel Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree") and Rubin & Levin, P.C. ("R&L") (collectively, the "Firms"), each by counsel, and in further support of the *Application to Employ Rubin Levin, P.C. as Special Counsel* and the *Application to Employ Ogletree Deakins as Special Counsel* filed by the Trustee on February 11, 2021 (the "Applications"), and pursuant to this Court's request for additional information at the hearing on the Applications held on March 17, 2021, states as follows:

*Introduction*

Although the only matter currently before the Court is whether the Trustee should be permitted to hire special counsel in order to investigate and pursue potential causes of action, the question necessarily involves some discussion of the possible causes of action, and the Trustee's need for assistance. This Memorandum is intended to provide more information about those matters, with the understanding that additional causes of action may be discovered, and that some potential causes of action discussed in this brief may not be pursued following further investigation by the Trustee and his counsel.

I. **<u>Relevant Background</u>**

 A. **<u>Events Prior to the Bankruptcy Filing</u>**

The Debtor and its owner Bob Carmichael were defendants in a long-running lawsuit in the Johnson County Superior Court, filed in late 2015 by Carmichael's former employer, Separators, Inc. ("Separators"). *See Separators, Inc. v. Robert Carmichael, Olice Eugene Monday, II, and Centrifuge Supplies, Inc.*, No. 41D04-1509-PL-000091 (Johnson Super. Ct. 4) ("State Court Litigation"). Separators alleged that Carmichael misappropriated Separators' trade-secret, confidential, and proprietary information to create and operate Debtor.

On January 31, 2019, the trial court issued findings of fact, conclusions of law, and order awarding Separators damages. *See* Findings of Fact, Conclusions, and Order, dated Jan. 31, 2019 [previously filed as Doc. 165-1]. The trial court held that Separators was entitled to compensatory damages for its lost profits in the amount of $8,680,447.00 and exemplary damages pursuant to the Indiana Crime Victim's Relief Act in the amount of $3,000,000.00. The court also awarded Separators its attorneys' fees, expenses, and costs. It further found that if Separators were not awarded exemplary damages under the Indiana Crime Victims Relief Act, Separators would be entitled to exemplary damages of $3,000,000.00 under the Indiana Uniform Trade Secrets Act due to Defendants' "willful and malicious misappropriation." Final judgment was not yet entered on January 31, 2019, because the trial court had not yet determined the amount of attorneys' fees to be awarded.

The Trustee has discovered that on February 15, 2019 – after the Johnson County court had issued its findings that Separators would be awarded substantial damages against Carmichael and Debtor – Carmichael sent an email to the representative of another company, Trucent, Inc., offering to sell Debtor to Trucent. *See* Affidavit of Thomas A. Krudy ("Krudy Aff.") ¶ 3(a) and

2

exhibit thereto [previously filed as Doc. 165-2]. Carmichael stated to the Trucent representative: "I would sign over 100% ownership and stay on full time to take this company to the next level." (*Id*.)

On March 4, 2019, CSI and Carmichael filed a motion to correct error in the State Court litigation. On July 11, 2019, the trial court denied the motion to correct error, entered its award of attorneys' fees and costs for Separators, and entered final judgment in favor of Separators. *See* Docket entries dated 7/11/2019 at https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6InhSUGlXU UFZNngtV21QanhqRHBkbkdQTU9MX0I1MFZmcTRtTGItd2ZGbzgxIn19.[1]

The Trustee has discovered that on July 13, 2019 – two days after final judgment was entered against Carmichael and Debtor in the State Court Litigation – Carmichael sent another email to a representative of Trucent, Tom Czartoski.  Carmichael wrote to Czartoski:

> Guys, Wanted to see if we could talk next week. I am going to continue to fight this. But I want to take this company to the next level. But I cannot due this by myself. Wanted to see if you have any interest in this direction. I have a total of 4 employees. My thought was for all of us to become employees of Trucent. ***Start moving all our customers under the Trucent umbrella and run all the business through you. I will start winding Centrifuge Supplies down.*** I will keep the company open until we get a final answer from the court. Not asking you to buy the company. I think we can come to terms that would work out for both of us. I know we can take it to the next level. Just need more man power to get there, and I don't want to keep putting this on hold.

(Krudy Aff. ¶ 3(b) and exhibit thereto [Doc. 165-2] (emphasis added).)

### B.     Filing of the Bankruptcy and Carmichael's Move to Trucent

---

[1] Certified copies of the state court orders encompassing the Judgment were filed herein as Exs. A and B to Doc. # 42.

3

The Trustee has discovered that public records show a new company, Trucent Centrifuge Parts and Repair, LLC ("Trucent CPR") was formed on July 29, 2019.[2] The CEO of that new company is Thomas Czartoski, the individual to whom Carmichael had sent his email on July 13, 2019, offering to transfer Debtor's business to Trucent.

On July 30, 2019, the very next day after Trucent CPR was formed, Carmichael filed the Debtor's voluntary Chapter 7 petition (the "Petition Date"), after which Thomas A. Krudy ("Trustee") was appointed as Chapter 7 trustee.

Since filing this bankruptcy, the Debtor has had no employees and has not been engaged in any business. By the Petition date or shortly thereafter, Carmichael and all of the Debtor's other employees accepted employment – as predicted in Carmichael's July 13, 2019 email to Trucent – with the new company established the day before Debtor's bankruptcy filing, Trucent CPR.

On August 6, 2020, Trucent issued a press release stating that it had hired Carmichael in a key management position for Trucent CPR. The press release stated:

AUGUST 6, 2019

## Centrifuge Parts and Repair, A Trucent Company – Welcomes 20-Year Centrifuge Services Veteran

The company would like to welcome Bob Carmichael to a key management position. Bob is a 20-year veteran of centrifuge repairs and part sales. He will join the management team to  support the robust operational service footprint of Trucent with service facilities spanning across North America, including Canada and Mexico. Bob will focus his efforts on expanding current parts and service operations to support disc centrifuges in the dairy, ethanol, pharmaceutical, industrial, and rendering business segments.

---

[2] *See* https://bsd.sos.in.gov/PublicBusinessSearch/BusinessInformationFromIndex

4

(Declaration of Christina Jack ("Jack Decl.") ¶ 4 & Ex. A [previously filed as Doc. 165-3].)

In addition, Carmichael's LinkedIn page shows that Trucent/CPR also announced around this same time that it had hired the three other former employees of the Debtor: Charlotte Lauderbaugh, Tim Pennington and Gene Monday. (Jack Decl. ¶ 5 & Ex. B [Doc. 165-3].)

Shortly after Carmichael moved to Trucent CPR, Trucent's website also replicated certain aspects of Debtor's former website. For example, the Trucent webpage contained a number of pictures that had also appeared on Debtor's former website. (*See* Jack Decl. ¶¶ 6-7 & Exs. C & D.)

Trucent CPR now operates out of Debtor's former office and warehouse space and uses the same address formerly used by Debtor: 1515 Hancel Pkwy., Mooresville, IN 46158. (*See* Jack Decl. ¶ 8 & Ex. E [Doc. 165-3].)

### C. Debtor's Estate

Apparently right up until it filed bankruptcy, Debtor had been a highly profitable business. The Johnson County Court found that during its first four years of existence between March of 2013 and April of 2017, Debtor "had already generated total profits of $3.25 million." *Findings of Fact, Conclusions of Law and Order* ¶ 38 [Doc. 165-1]. And yet upon filing bankruptcy, Debtor had zero ongoing operations. The Debtor's vibrant and profitable business had simply disappeared. The primary things left behind for the estate to collect were accounts receivables and inventory (along with, of course, any causes of action on behalf of the estate).

### II. The Potential Causes of Action

This is therefore a somewhat unusual case in which a very profitable business filed a Chapter 7 petition, ceased business, and the principal of the company and all of the employees went to a newly formed company, Trucent CPR, a Michigan limited liability engaged in the

5

same business as the Debtor, at the same location, performing the same services for and selling the same products to many of the same customers of the Debtor.

As found by the Johnson County Court, prior to Debtor's bankruptcy filing, the same principal, Carmichael, had left employment with Separators, to form the Debtor company using plans, diagrams, technical manuals, customer lists and other confidential, proprietary information and trade secrets that he misappropriated from Separators. When Separators obtained a state court judgment for over $12 million against Carmichael, the Debtor and another employee (Gene Monday), Carmichael filed the bankruptcy petition for Debtor, and then went to work for Trucent CPR.

This pattern of facts caused Separators and the Trustee to consider whether improper transfers may have occurred again – before or after the bankruptcy filing – and whether there may be potential causes of action against Carmichael and/or Trucent. Initially, Separators filed a motion suggesting that some assets should be abandoned by the estate because they had minimal value and/or were misappropriated from Separators.[3] The Court agreed that any property belonging to Separators was not property of the estate, but denied the request for abandonment, "to permit Carmichael to make his proposed offer to purchase intangible property or goodwill owned by the Debtor, that was not determined by the Johnson Superior Court to have been misappropriated, and to permit the Trustee to consider such offer."[4] It is undisputed that the

---

[3] *See Motion for Abandonment, with Trustee's Consent, of Misappropriated "Goodwill," for Relief from Automatic Stay, and Notice of Objection Deadline* filed October 23, 2019.

[4] *See Order on Motion of Separators, Inc. for Abandonment and Relief from the Automatic Stay* entered December 9, 2019.

6

district court overseeing the Debtor's bankruptcy (and this Court by referral) has *exclusive* jurisdiction over all of the debtor's property, wherever located, and all property of the debtor's bankruptcy estate, as broadly defined in section 541(a) of the Bankruptcy Code. 28 U.S.C. § 1334(e).

Although Carmichael never made any offer to purchase the Debtor's goodwill or other intangible assets, the Trustee's investigation has uncovered evidence (as set for above and discussed below) that Carmichael, with the assistance of third parties, including Trucent, may have clandestinely transferred the Debtor's goodwill, including customers, customer lists, purchase orders, plans, diagrams, technical manuals, and other intangible assets, to himself and his new employer, CPR Trucent.

Thus far, the Trustee has identified the following potential causes of action ("Potential Claims") that are property of the estate and may be asserted by the Trustee on behalf of the bankruptcy estate:

- To avoid and recover pre-petition transfers to or for the benefit of Carmichael and/or Trucent pursuant to 11 U.S.C. §§ 548 and 550, and the Indiana Uniform Voidable Transactions Act;

- To avoid and recover unauthorized post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550;

- Damages and recovery of property arising from violations of 11 U.S.C. § 362.

- Recovery of damages from Carmichael for breach of fiduciary duty and from third parties, including Trucent, for aiding and abetting his breach of fiduciary

duties[5];

- Recovery of damages from Carmichael and third parties including Trucent for tortious interference with the Debtor's business relationships[6];

- A determination that Trucent is the successor as a matter of law to the Debtor's business, and in such capacity may be held responsible for all debts of the Debtor.[7]

### III. Relevant Evidence and Why Special Counsel Is Necessary

Evidence supporting Potential Claims has already been uncovered as noted above, and there is good reason to believe that additional evidence will be found, in part through detailed expert analysis of the Debtor's computers in the Trustee's possession, and of electronic "cloud" content accessible by the Trustee.

In the Trustee's June 26, 2020 *Objection* to the Debtor's *Motion to Convert* the case for a purported Chapter 11 "reorganization," it is noted that

> During the course of the execution of the duties of the Trustee's pursuant to 11 U.S.C. §704(a), the Trustee committed a review of the contents of the Debtor's

---

[5] *See, e.g, See Wash. Frontier League Baseball, LLC v. Zimmerman,* 2018 U.S. Dist. LEXIS 88897, at *39 (S.D. Ind. May 29, 2018); *Crown Holdings, LLC v. Berkley Risk Adm'rs Co.. LLC*, 2016 U.S. Dist. LEXIS 17425, at *5-6 (S.D. Ind. Feb. 12, 2016); *Fifth Third Bank v. Double Tree Lake Estates, LLC,* 2014 U.S. Dist. LEXIS 99758, at *34 (N.D. Ind. July 23, 2014).

[6] Elements are (1) the existence of a valid relationship, (2) the defendant's knowledge of the existence of the relationship, (3) the defendant's intentional interference with that relationship, (4) the absence of justification, and (5) damages resulting from defendant's wrongful interference with the relationship. *Rice v. Hulsey,* 829 N.E.2d 87, 88 (Ind. Ct. App. 2005). Inducing breach of fiduciary duty satisfies the "wrongfulness" element. *Inst. for the Int'l Educ. of Students v. Chen,* 2020 U.S. Dist. LEXIS 139557, at *34-35 (S.D. Ind. Aug. 5, 2020), *citing Zimmer, Inc. v. Stryker Corp.,* 2014 WL 3866454, at *10 (N.D. Ind. Aug. 6, 2014); *Meridian Fin. Advisors, Ltd. v. Pence,* 763 F. Supp. 2d 1046, 1063 (S.D. Ind. 2011).

[7] This brief does not address whether there might also be evidence of criminal conduct such as bankruptcy fraud, concealment of assets and false oaths under 18 U.S.C. §§ 152 and 157. Such matters would be handled by the U.S. Attorney rather than the Trustee.

8

> computers which are now in possession of the Trustee, it was discovered that Carmichael did not disclose in the bankruptcy Schedules, Statement of Financial Affairs, or anywhere else, that in the weeks before the bankruptcy filing, he was also communicating with his new employer, Trucent, about moving the Debtor's existing customer base and employees to Trucent.

Specific examples of Carmichael's e-mails are attached as exhibits to the Trustee's Affidavit [Doc. 165-2] attached to Separators' June 26, 2020 *Objection to Motion to Convert* [Doc. No. 165], as noted above. In one of the e-mails, Carmichael states, for example, approximately two weeks prior to filing the bankruptcy that Carmichael would "[s]tart moving all our customers under the Trucent umbrella and run all the business through you. I will start winding Centrifuge Supplies down." This appears to be an admission of an intention to make improper transfers, breach fiduciary duties, and engage in related unlawful conduct.

Although the inferences to be drawn from such e-mail correspondence from Carmichael to Trucent are self-evident, the Trustee and his current counsel do not have necessarily have sufficient familiarity with the Debtor's former line of business, and the current Trucent business, to fully identify all improper transfer and copying of valuable intangible data and customer information by Carmichael or others before and after the filing of the bankruptcy. However, Separators and its counsel (particularly Ogletree), as well as computer forensic and economic damages experts retained by Separators during the extensive litigation in the Johnson County litigation, have substantial knowledge and expertise about precisely those matters, by virtue of Separators' long-standing operations in the same business, and years of experience litigating the same issues with the very same party, Carmichael. Given such knowledge and experience, and the fact Separators is now the only creditor in this case by virtue of having allowed other small

9

claims to be paid in full[8], it would be grossly inefficient as well as unduly expensive for the Trustee and other counsel to attempt to gain the requisite knowledge, expertise, and personnel to investigate and pursue the without the assistance of Separators and its counsel.

### IV. Why the Trustee Should Be Permitted to Investigate and Bring Meritorious Actions that Belong to the Estate

Assuming the investigation finds sufficient merit to warrant prosecution of causes of action, additional questions posed by the Court (although not presently raised by any pleadings) are whether the Trustee would be the proper party to bring such actions and whether the bankruptcy court would be the appropriate forum. At the March 17 hearing, the Court inquired also whether this is a "two party" dispute that should be brought by Separators in state court.[9]

Abstention is often the appropriate result in many two-party disputes, as where one of the parties is a secured creditor with a "blanket" lien on all assets, and the creditor can simply foreclose upon and sell collateral using state court remedies. Similarly, courts have held that property may be abandoned to a creditor who has a "possessory interest." *E.g., In re Manchester Heights Assocs., L.P.,* 165 B.R. 42, 44 (Bankr. W.D. Mo. 1994). But here, Separators is an unsecured creditor with no lien to foreclose, and as discussed below would have no ability as a creditor to assert most or all of the Potential Actions held by the Trustee. The Trustee is not only

---

[8] *See Amended Trustee's Application for Authority to Make Interim Distributions* filed June 2, 2020 reciting Separators' agreement permitting over $19,000 in other unsecured claims to be paid in full notwithstanding Separators' multi-million undisputed claim. The claims which were paid included over $11,000 owed to Carmichael, who opposed the Application.

[9] To the extent this bankruptcy case resembles a two-party dispute, that resemblance is the result of Debtor's misuse of the bankruptcy system. As a profitable business when it filed bankruptcy, Debtor had no unsatisfied debtors other than Separators *because it was paying its debts* and because it intended to re-create its business with the same vendors, suppliers, and customers in the form of Trucent CPR.

the party charged with liquidating assets and recovering property for the benefit of unsecured creditors, but is also uniquely able to investigate the pertinent facts, being in possession of the Debtor's computers and access to cloud-based data.

Most obviously, only the Trustee can assert (and only this Court can hear) disputes about property of the estate and pure bankruptcy causes of action, such as violations of 11 U.S.C. § 362, actions to recover pre-petition transfers pursuant to 11 U.S.C. §§ 548 and 550, and actions to recover unauthorized post-petition transfers pursuant to 11 U.S.C. § 549.

Other causes of action which belong to the Trustee as representative of the estate—such as claims for breach of fiduciary duty, tortious interference with business relationships, and aiding or abetting either—cannot be brought by a *creditor* inside or outside of bankruptcy, because they are *corporate* causes of action that can only be brought by the Debtor or a Trustee in bankruptcy. A creditor of a corporation may not ordinarily bring actions for wrongs committed against the corporation. *See, e.g., Geiger & Peters, Inc. v. Berghoff,* 854 N.E.2d 842, 843 (Ind. Ct. App. 2006).

Even if Separators were to somehow attempt to *compel* the bringing of such actions on behalf of the now defunct entity owned by Carmichael (who now works for the alleged co-conspirator) Separators would surely encounter expensive and potentially fatal hurdles and delays. There is no operating "debtor" with incentive to pursue such claims or to identify and prevent the spoilation of evidence on the computers and cloud sources. It is also unlikely Separators could even gain access to such information in time to prevent its destruction. In the state court litigation, the court found it necessary and appropriate to enter a default judgment as to liability against Carmichael and other defendants based on a finding of their "willful deletion of crucial evidence (and their direct contempt of this Court's clear orders)," including computer

11

and cloud-based data. *See Findings of Fact, Conclusions of Law and Order* & ¶ 107, entered by the Johnson Superior Court on November 8, 2016 [Doc. 165-1]

While it is true that outside of bankruptcy, Separators could attempt to pursue claims for fraudulent transfers under state law, and potential claims against Trucent for successor liability, it could *not* do so while a bankruptcy is pending, because during a bankruptcy all such claims are property of the estate under § 541(a) of the Bankruptcy Code, subject to this Court's *exclusive* jurisdiction under 28 U.S.C. § 1334(e), and control by the Trustee.[10] The Trustee is the only party with statutory authority to assert causes of action that belong to the estate. *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1346-47 (7th Cir. 1987); *Fisher v. Apostolu,* 155 F.3d 876, 881 (7th Cir. 1998). Accordingly, so long as there is a bankruptcy estate (which would be true if the Trustee pursues *any* claims), Separators could do nothing with any debtor or estate causes of action. Furthermore, this Court is already familiar with many of the relevant facts, the parties, and their counsel, by virtue of contested proceedings in which counsel have appeared for Separators, Carmichael, Trucent, the Debtor and the Trustee, and some potential claims have been discussed.

Finally, it should be noted that before filing of the Trustee's Applications, the Trustee and counsel for Separators extensively discussed and researched the possibility of assignment or "distribution" to Separators of estate causes of action. Unfortunately, that research revealed an

---

[10] It will be recalled that Carmichael has previously argued in state court and in this court in connection with the Debtor's *Motion to Convert to Chapter 11* that Separators was attempting to pursue estate causes of action. While the argument had no merit in that instance, it can be assumed that if Separators were to attempt to pursue claims that actually belong to the estate – which Separators would not do or wish to do – the issue would certainly bring the parties back to this Court.

12

unresolved split in case authority on the issue.[11] It would not be in the interests of Separators, the Trustee, or the courts to litigate claims with a risk of latent jurisdictional issues that could make the proceedings void.

## V. The Roles of the Prospective Counsel

The Court has also inquired about the anticipated roles that would be assumed by the various special counsel for the Trustee. Although a bankruptcy trustee is given wide latitude in decisions regarding professionals,[12] it might understandably be thought that three firms as special counsel to a Trustee runs the risk estate assets will be dissipated by duplicative administrative claims for repetitive services. Such concerns are mitigated if not completely eliminated here, however, by the fact that 1) all recoveries would be paid into the estate, while all of the fees to Ogletree and R&L would be paid by Separators outside of the bankruptcy[13] -- thereby maximizing potential to pay administrative claims or new unsecured claims; and 2) Ogletree and R&L have been working on the case for some time, and have already developed a smooth system for devoting the particular strengths and experience of each firm without

---

[11] *Compare, e.g., In re Clements Mfg. Liquidation Co., LLC,* 558 B.R. 187, 189 (Bankr. E.D. Mich. 2016), *McCarthy v. Navistar Fin. Corp.*, 210 B.R. 27, 32 (N.D.N.Y) and *Met-Al, Inc. v. Gabor,* 225 B.R. 920, 923-24 (Bankr. E.D. Wis. 1998) (assignment not permitted) *with Knoll, Inc. v. John Zelinsky & Key Bank, N.A.,* 2008 U.S. Dist. LEXIS 133897, at *13 (N.D.N.Y. Apr. 7, 2008); and *Cadle Co. v. Mims,* 608 F.3d 253, 261 (5th Cir. 2010) (trustee could sell fraudulent conveyance claims to debtor).

[12] *E.g., In re Teknek,* 394 B.R. 884, 888 (Bankr. N.D. Ill. 2008) and cases cited therein.

[13] As described in the Trustee's Applications, the only exception to this would be if new unsecured claims were discovered, in which event Separators might choose to file an administrative claim for fees, to be ruled on by the Court, so appropriate fees would be deducted before pro rata payment to unsecured claims. In light of Separators' multi-million dollar unsecured claim, and the fact there are no presently other unsecured claims other than potential claims of Carmichael which have been subordinated to that of Separators, no such petition is expected to be filed.

duplication of effort in their representation of Separators to date.

As preceding sections of this Memorandum have mentioned, Ogletree and its attorneys and retained experts are most familiar with the business engaged in by the Debtor, Separators, and Trucent, and the diversion of confidential, proprietary information, business assets, and trade secrets by Carmichael, because of Ogletree's representation of Separators in the state court trial and appeals, and other matters. The two Ogletree attorneys proposed for this representation – Christopher C. Murray and John Drake – have extensive experience litigating misappropriation of trade secret and related unfair competition claims.[14] For these reasons, the firm's services will be uniquely useful to the Trustee in identifying suspicious practices and pertinent evidence, distinguishing between intangible property that was stolen from Separators and was directly involved in the state court litigation from goodwill and other intangible property which may have been stolen from the Debtor and transferred to Carmichael and/or Trucent.  Its experience gained from the state court trial and its knowledge of the line of business engaged in by all of the companies will also be valuable in estimating and quantifying damages arising from Potential Claims, and in assisting the Trustee with investigating, evaluating and litigating all such matters.

In *In re Age Ref., Inc.*, 447 B.R. 786, 800 (Bankr. W.D. Tex. 2011), for example, the court approved the Trustee's retention as special counsel a law firm representing the creditor's committee, in part, to gain the benefit of that firm's prior experience litigating the same issues. The court explained:

> The trustee says he was motivated to retain the law firm because it has already invested substantial time and effort into ferreting out the facts to support the

---

[14] *See* https://ogletree.com/people/christopher-c-murray/; https://ogletree.com/people/john-a-drake/.

14

>  proposed litigation, and that it makes more sense to "buy" that knowledge by
>  directly retaining the firm than it does to expect that firm to "educate" some other
>  lawyer. What is more, because this particular firm is already a retained
>  professional in the case, were it limited to simply "educating" some other firm,
>  that work would in all likelihood still be billed to the estate, on the theory that the
>  committee's constituency benefits from the trustee's pursuit of this litigation. It is
>  more efficient to just hire the knowledge, maintains the trustee, and this court is
>  inclined to agree with that economic argument (without here reaching other issues
>  that this retention raises). It is clear that the law firm would not be representing
>  the Committee in this retention, though the work would appear to be closely
>  aligned with the interests of the Committee and its constituency in augmenting the
>  estate by the pursuit of available causes of action. That the interests are aligned is
>  unremarkable—it happens in bankruptcy cases all the time.

*In re Age Ref., Inc.*, 447 B.R. 786, 800 (Bankr. W.D. Tex. 2011). Such reasoning equally applies here and is common.[15]

By contrast, R&L's attorneys have more expertise and experience with bankruptcy litigation and avoidance actions, representation of bankruptcy Trustees, and potential issues relating to the parameters of property of the bankruptcy estate, the duties of debtors and

---

[15] *See also In re AroChem Corp.*, 176 F.3d 610 (2d Cir. 1999) (approving trustee's retention of creditor's former attorney because of the "identity of interests between the trustee and special counsel's former client with respect to the special matter for which special counsel was retained."); *Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993) (affirming bankruptcy court's approval of the trustee's employment, for the purpose of pursuing a preference action against the former president of the debtor, an attorney who had previously represented a creditor of the estate); *In re Fondiller*, 15 B.R. 890, 892 (9th Cir. BAP 1981) (finding that chapter 7 trustee's employment of creditor's counsel was proper under section 327(a) because retention was "limited to the search for, and attempted recovery of, specific assets allegedly concealed, and the investigation of certain alleged fraudulent conveyances" in which the firm's creditor clients were not involved*); In re Contractor Tech., Ltd.*, 2006 WL 1492250, at *8, 9–10 (affirming bankruptcy court's approval of trustee's retention of law firm that represented 8 of the 400 creditors in the case to pursue certain claims identified by the trustee (not involving any of the firm's creditor clients) because "[t]he creditors and the Trustee [were] generally aligned in regard to the purposes of [the firm's] employment. All want[ed] [the firm] to recover substantial sums for the estate in order to pay creditors' claims in this bankruptcy case"); *In re RPC Corp.*, 114 B.R. 116 (M.D.N.C. 1990) (approving the chapter 7 trustee's retention of counsel that also represented the debtor's former CEO and creditor of the estate for the purpose of pursuing a lender liability claim against a bank that had loaned money to the estate).

15

trustees, and potential issues concerning bankruptcy court jurisdictional matters. It is anticipated that Ogletree personnel and experts will provide the lion's share of assistance with gathering evidence and investigation of potential claims, that R&L will be more involved with the drafting of bankruptcy pleadings and advising the Trustee regarding his powers and duties under the Bankruptcy Code, and that both firms would likely share in presentation of evidence and arguments in any trials.

It is anticipated that G&S will assume a more limited advisory role, and would not participate a great deal in investigation or litigation of causes of action. It is undisputed and expressly permitted by 11 U.S.C. § 327(c) that a law firm which represents a creditor may also serve as special counsel for the trustee. It nonetheless makes sense for G&S, which does not also have Separators as a client, to remain as counsel to provide candid advice to the Trustee regarding any possible conflicts of interest and the Trustee's duties to creditors generally.

WHEREFORE, for the reasons stated herein, and in the Trustee's Applications, the undersigned respectfully request that the employment of Ogletree and R&L to represent the Trustee in this case as special counsel be approved, that the Court approve the Employment Agreements attached to the Applications, and authorize the Trustee to enter into the same on behalf of the estate, and for such other relief as is proper.

By:

*/s/Thomas A. Krudy*  
Thomas A. Krudy  
Office of Thomas A. Krudy  
236 E. 15th Street  
Indianapolis, IN  46202  
Telephone:  317.635.4428  
Email:  tkrudytrustee@gmail.com

*/s/Paul Gresk*  
Paul Gresk  
Gresk and Singleton, PC  
135 N. Pennsylvania, St., #1400  
Indianapolis, IN  46204  
Telephone:  317.237.7914  
Email:  pgresk@gslawindy.com

16

| | |
|---|---|
| */s/John M. Rogers* | */s/Christopher C. Murray* |
| John M. Rogers | Christopher C. Murray, #26221-49 |
| Rubin & Levin, P.C. | Ogletree, Deakins, Nash, Smoak & Stewart, P.C. |
| 135 N. Pennsylvania Street | |
| Suite 1400 | 111 Monument Circle, Suite 4600 |
| Indianapolis, IN  46204 | Indianapolis, IN  46204 |
| Telephone:  317.860.2923 | Telephone:  317.916.1300 |
| Email:  johnr@rubin-levin.net | Email:  christopher..murray@ogletree.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2021, a copy of the foregoing *Memorandum in Further Support of Trustee's Application to Employ Special Counsel* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

**Reynold T. Berry**    rberry@rubin-levin.net, lking@rubin-levin.net;atty_rberry@bluestylus.com
**Paul Gresk**    pgresk@gslawindy.com, lnewlin@gslawindy.com
**Paul D. Gresk**    bankruptcy@gslawindy.com, IN66@ecfcbis.com
**Michael W. Hile**    mhile@jacobsonhile.com, assistant@jacobsonhile.com
**Christine K Jacobson**    cjacobson@jhklegal.com, 5412@notices.nextchapterbk.com **Andrew T Kight**    akight@jhklegal.com, assistant@jhklegal.com;akight@ecf.courtdrive.com
**Thomas A. Krudy**    tkrudytrustee@gmail.com, IN65@ecfcbis.com;dawehner@yahoo.com
**Randolph A Leerkamp**    rleerkamp@gslawindy.com
**Whitney L Mosby**    wmosby@bgdlegal.com, fwolfe@bgdlegal.com
**John M. Rogers**    johnr@rubin-levin.net, jkrichbaum@rubin-levin.net;atty_rogers@bluestylus.com;mralph@rubin-levin.net;lking@rubin-levin.net
**James E Rossow**    jim@rubin-levin.net, ATTY_JER@trustesolutions.com;mralph@rubin-levin.net
**Bradley A Sarnell**    bradley.a.sarnell@usdoj.gov, northern.taxcivil@usdoj.gov
**Thomas C Scherer**    tscherer@bgdlegal.com, fwolfe@bgdlegal.com
**U.S. Trustee**    ustpregion10.in.ecf@usdoj.gov

17

I further certify that on April 7, 2021, a copy of the foregoing *Memorandum in Further Support of Trustee's Application to Employ Special Counsel* was mailed by first-class U.S. Mail, postage prepaid, or electronic mail as indicated, and properly addressed to the following:

| | | |
|---|---|---|
| Robert Carmichael<br>c/o Jacobson Hile Kight LLC<br>108 E. 9th Street<br>Indianapolis, IN   46202-3302 | D.A. Green, LLC<br>c/o Ms. Debbie Green<br>2198 Reeves Road<br>Plainfield, IN   46168-7927 | FedEx<br>942 South Shady Grove Road<br>Memphis, TN   38120-4117 |
| REMC<br>SCI REMC<br>P.O. Box 3100 | Separation Equipment<br>501 N. Falkenburg Road<br>Tampa, FL   33619-7878 | Tetra Pak<br>101 Corporate Woods<br>Vernon Hills, IL   60061-3109 |
| Vectren Corporation<br>One Vectren Square<br>211 N.W. Riverside Drive<br>Evansville, IN   47708-1251 | Worldwide Express<br>2323 Victory Avenue, Suite 1600<br>Dallas, TX   75219-7696 | |

*/s/Christopher C. Murray*

46697624.2